Our next case, last case of the day, is Drummond Coal Sales Inc. v. Kinder Morgan Operating LP. Looks like everyone is on. Mr. Huey Wells, you are up first for Drummond Coal Sales. Thank you. My name is Trey Wells, and I represent Drummond Coal Sales in this matter. There are four claims at issue on appeal, three of which were dismissed at the motion to dismiss stage, and one of which was dismissed at summary judgment, all of which we believe were erroneous. But in the interest of time for purposes of the motion to dismiss, I'm going to focus on the frustration of purpose claim and the district court's finding as a matter of law that foreseeability could be decided on the pleadings as a matter of law and that any amendment would be futile, meaning no allegation could possibly change the result. The frustration of purpose allegations that I think are important to point out to the court and to synthesize what the frustrating event really is are these. Paragraph 7, the contract signed in May of 2005, purpose of which is to import coal and then deliver it by to power plants in the area. Paragraph 9, the complaint said that Kendall Rubin was aware of this purpose. In fact, one of the conditions for Drummond's performance under the schedule was our execution of a contract with Norfolk Southern Railway to transport the coal to those power plants. Paragraph 14, starting in 2010, five years after the contract was executed, some of those plants start closing. Paragraph 15, by the time we filed suit, more than half of the plants listed in the Norfolk Southern contract had closed. Paragraph 27, and this is the event, the frustrating event, it was a basic assumption of the schedule that the power plants in the area of the Shipyard River Terminal would continue to operate and require shipments of coal. And that your position, I understand it, is you anticipated and believed that there would be no change in environmental regulations that would adversely impact the shipment of coal. Well, the precipitating factor that caused the plant's closure was indeed a historical fact and your position has to be that wasn't foreseeable. I don't understand that in the first decade of the 21st century. About a half century ago, when your father and I were in undergraduate school, I went to a banquet where a titan of industry got up and the only thing I remember about his speech is he said, y'all may have heard about this new thing called ecology and the environment. Environmentalism, I believe they call it, the radicals call it. Don't worry about that. It's just a passing fad. So said Jack Warner. Now, let me tell you, if you'd done this contract in 1970, 72 or so, you might have an argument, but 50 years later, I mean, goodness gracious alive, everybody who's in business, anybody who impacts the environment knows that there is a threat of statutory, regulatory, or decisional changes that impact the industry. Well, Judge Carr, as you mentioned 1972, which is when the Clean Air Act was passed, all these plants have been in operation since that time and before and have been subject to those regulations for decades. None of them have closed. The issue is the plants closed and no one foresaw that. The frustrating impact to Drummond would have been the same if all plants had been destroyed by a tornado or a terrorist attack. Half of the plants that were the purpose of this contract closed down and it was not anticipated or foreseeable by anyone in the not the causal factor, but the actual frustrating event is what has to be unforeseeable. If you look at the coronation case, which I'm sure we all studied in law school at first, the frustration of purpose defense, the lease, apartment lease to view the coronation of King George, the king gets sick, the parade is canceled. The frustrating event is the cancellation of the parade. It doesn't matter what illness caused King George's parade, all human beings can get ill. Mr. Wells, back before you signed this contract, the EPA tried to shut down most of the coal fire plants in the Tennessee Valley Authority. Are you aware of that? I'm not. North Carolina, Tennessee, Alabama, we had the case. I wrote an opinion in that case. The fact that the EPA was after coal fire plants was known to everybody. They were taking, and you know this, I would expect, they were taking the position that the grandfathered coal fire plants, which were permitted to have routine maintenance and operation expenses, were okay, but if they had any capital improvements, they had to shut them down and go through the whole, as if they were building a new plant. So, what EPA did was, it said the rules on ordinary maintenance are no good anymore. We're going to make every coal fire plant go through the regulatory process to put a new plant online. Now, that was in the early, that was 1999, 2000, 2002 area. So, I can't imagine, picking up on what Judge Carnes was saying, I just can't imagine that the parties didn't take that into account in the price that was charged when you negotiated. All those things you take into account in the bargain. And your honor, the issue is not a matter of price and environmental regulations causing a difficulty in the competitiveness of coal or price of coal. It is the issue that the purpose of the contract is to serve these specified plants, and most of them are gone. I would just, before moving to summary, Judge. All I'm saying is what happened in this case is something that you could anticipate and take into account in negotiating the terms of the agreement. Ms. McDonald, or at least the red brief, makes the point that section 12 of the contract anticipates adverse regulatory changes may increase the cost of Kinder Morgan. And their allocation of compliance costs with new regulations, environmental regulations, if you can anticipate that's going to increase Kinder Morgan's cost, you could certainly anticipate that it might increase the cost of the plants that you plan to haul the coal to, to the point that they would go out of business. And your honor, the response to that would be, I would point the court to the Southern District of New York. In that case, labor disputes were specifically referenced in the contract. The delay at issue was precipitated ultimately by a labor dispute, but the actual event that was unforeseen, and the court found it was a question of fact, a trial issue, this issue, was there was a labor dispute, and then the city, in response to that dispute, prevented the contractors from working together and prevented the contractor from actually and even mentioned in the contract, the ultimate frustrating event, which is the city's response to that was not foreseen. And that's what we would say here is the closure of the plant is not foreseen. Moving on to the motion for summary judgment. The issue is whether Kinder Morgan has the ability, as they promised to do, to be able to handle up to four million tons of coal in any given year. Whether you view that issue from the purpose of our statutory judgment claim, claiming they have an inability to perform or defense to their breach of contract claim, the issue is the same. Now, there are two ways that Kinder Morgan gets paid in this contract. Number one, we deliver coal, they charge us a per ton fee for handling it. The benefit on both sides is clear. We get services, they get money. The second way they get paid is if we deliver zero tons of coal, they still get paid roughly $13 million a year. Now, the question is, what is the benefit flowing to Drums for that consideration? What consideration do we get for paying $13 million a year for delivering no coal? The only consideration is for them, their promise that we have reserved four million tons of capacity at their port. In fact, that's exactly what they admitted in their pleadings. I mean, that's exactly right, but how does that affect the industry as a whole? And the issue is without an ability to perform as promised, they cannot call on us to perform. Now, we presented evidence and I don't think that there's been any challenge that the evidence is either undisputed on our side or at least a question of fact that they do not have the capacity as promised in this contract. The district court avoided that issue by just saying there's a couple of ways we don't even have to look at it. One, it's a condition preceded. Well, the law is clear both in New York and everywhere else, this court included, that feudal acts are not required by the law. A condition preceded does not have to be performed if it is clear that the other party will not be able to perform. Yeah, but the reason they couldn't perform is you've had them ship off the cranes. Well, and that issue is an issue they have raised and it's an issue... I would hope so. It would be malpractice not to. They have to have the cranes, they're financed, they're put up, they're doing some unloading, and then y'all say send them to South America and then you say, no, no, send them to the United States at this place. And then you say, ah, you don't have the capacity. And that is never what we have argued, Your Honor. The capacity analysis in this case has always assumed those cranes are there. The Kendra Morgan, their own marketing materials would say they have two and a half million tons of capacity was from when the cranes were there. The data that our expert relied on in determining they had less than four million tons was from when the cranes were there. And the side letter agreement does not relieve them of their obligation to have capacity. All it says is if we're going to bring coal in, we have to bring in equivalent cranes. What we proved is if we bring in equivalent cranes, you cannot handle four million tons. So it's not a hypothetical issue where we're saying, well, we took away your capacity and therefore you don't have it. They didn't have it in the first place. And that the cranes is not the only issue for a port. It is a very complex issue in terms of capacity. Is the metric there four million or 3.1 million? The contract says they will commit to up to four million. So we would say the metric is four million. Their own marketing materials say they don't even have 3.1. I see my time is up. If anyone has any further questions, I'll be happy to field them or you preserved your time. We've got now Ms. Drake for Kinder Morgan. Thank you, Your Honor, and may it please the court. Denise Drake appearing on behalf of Kinder Morgan. Each one of Drummond's reasons for reversal rests on an abstract characterization of the party's rights and obligations. But this court's analysis is grounded in the text of the contract. And I hope to focus on three provisions in particular that each call for a straightforward I would appreciate it if you would focus on his condition preceding capacity argument that even if they hadn't shipped the cranes off or even if they shipped them back, your own documents admit or somebody expert may be testified that you couldn't have complied with the Sure, Your Honor, the conditions precedent are just one of the independent reasons why the capacity obligations here aren't the way that Drummond characterizes them. For one thing, as Your Honor mentioned, the cranes had been shipped off to Columbia for Drummond's benefit. He acknowledges that and said, but y'all admitted or at least there's evidence that is worthy of a fact finder's determination that even if the cranes had been returned or hadn't been shipped off, you wouldn't have had sufficient capacity for 4 million tons. Well, for one thing, Your Honor, as a factual matter, that was never established in the record. There were dueling experts on that question, and there's no basis in the five-letter agreements to assume that Drummond would have replaced the cranes with identical cranes. In fact, to the extent they were dueling experts and it's a material issue, then shouldn't have granted summary judgment, right? Well, Your Honor, it's not a material question on the terminal's capacity because Drummond's so-called capacity obligations never arose as a matter of law precisely because of the condition precedent. Throughout this case, Drummond has relied on a rhetorical shorthand of that Kendra Morgan had the obligation to provide 4 million tons of capacity. But on the text of the contract, Kendra Morgan has no freestanding obligation to provide that capacity at all. What the actual contract text says is that Kendra has the obligation to provide services for Drummond's cold if and only if certain conditions are first met. This text appears at section 1c of the contract. It's quoted on page 46 of Kendra's brief. And what that contractual language says is, quote, Kendra Morgan agrees to provide the services set forth in this schedule on a pro rata basis up to 4 million tons of commodity per calendar year through birth number two, provided that Drummond delivers such commodity to the terminal each calendar quarter. All of Kendra Morgan's obligations under this schedule are conditioned on, A, Drummond providing the notices required in section 2b below, and B, Drummond providing adequate quality and quantity of commodity as contemplated by the schedule, end quote. So your argument is there's a condition precedent to the condition preceding? There's a condition precedent to Kendra having to provide services for 4 million tons of coal. And until those conditions precedent are met, that obligation to provide the services for 4 million tons of coal never arose. Yeah, I understand it. While you're doing, we expect you to do it. Judges occasionally do it. It's how you characterize it. He's saying capacity. You're saying deliver the coal. And then we'll have to have the capacity. And until you deliver the coal, our condition is that we handle the coal you deliver, not that we have the capacity to do it before you deliver. And we look at 1b to see what we think about that, right? But that's exactly right, Your Honor. The parties didn't have to write the contract this way. They could have written it in the way that Drummond keeps trying to characterize it, which is to say, Kendra shall have 4 million tons of capacity at all time for Drummond to use or not use at its option. The reason the parties wrote the so-called capacity obligations with conditions precedent reflects the undisputed reality of terminal operations. And that's that by Drummond giving Kinder a year's advance notice of next year's coal delivery, Kinder can shift around resources and personnel and equipment to be ready to provide those services for that coal, or it can downshift those resources for use elsewhere if Drummond has already committed not to bring in coal for the next year. It's undisputed that for 2015 and 2016, which were the only years that are at issue in this case, Drummond didn't fulfill either of those conditions precedent. It nominated zero coal for both of those years, and it actually delivered zero coal for those years. New York law requires conditions precedent to be literally performed before they can give rise to the obligations that depend on them. Because Drummond did not perform them here, Kinder's obligations to provide services for that hypothetical coal never arose under the contract. All Kinder has to show is substantial performance of the obligation it had under the contract, which is to provide services for every ton of coal that Drummond ever nominates and delivers. It's undisputed that Kinder Morgan did that here. There's an issue that we alluded to earlier, which is that by the 2015 and 2016 years that are at issue in this case, really all of that had been made irrelevant by the side letter agreements that had modified the contract. Those side letter agreements came about as a favor to Drummond when Drummond wanted to use the cranes which will physically unload the coal from a vessel into the terminal and use them instead for Drummond's coal mining operations in Colombia. And so the parties executed two side letter agreements. They have virtually identical language. The later one of the two appears the document 52-5 of the appendix. And those amendments, quote, deleted Kinder's obligation to provide the terminal cranes during the contract Moreover, in the event that Drummond imports coal at the terminal during the contract term, Drummond or Kinder shall lease or otherwise provide if necessary two floating cranes to handle such importation of coal. And Drummond will bear the cost of the lease or other provision of such cranes. Or in the alternative, Drummond shall employ self unloading vessels. Kinder shall not have any performance requirements or liability for vessel demerit with respect to the employment of self unloading vessels. End quote. Each crucial fact about the side letter agreements is undisputed here. It's undisputed by Drummond's own president that the capacity of the cranes is what determines the coal capacity of the terminal. And once the cranes were removed by Drummond, the terminal's coal capacity was zero. It's also undisputed by Drummond's own president that once Drummond had removed the cranes, the hypothetical future capacity of the terminal would be determined by whatever alternate cranes or self unloading vessels Drummond were to choose to bring back to the terminal. And it's also undisputed that for the remainder of the case, Drummond neither brought alternate cranes nor self unloading vessels to the terminal. As the district court put it, to even speak of the terminal's capacity in those years, let alone for Drummond to complain about it, is a contradiction of the contract's plain terms. And nothing else is needed for this court to affirm the summary judgment. Finally, I'd like to turn to the text of the contract once more for the issue of foreseeability that was central to the motion to dismiss ruling. Drummond's claims for frustration of purpose and impossibility of performance are each subject to two requirements under New York law. That the environmental regulations that Drummond claims impacted the coal market be ones not only that parties did not foresee, but that they, quote, could not have foreseen and guarded against when they entered into the contract. First, it's common sense that two companies that are dedicated to the coal industry could foresee that environmental regulations could impact their industry. Pleadings must always be plausible. And we cited at least three New York law cases in which a court grants a motion to dismiss these claims because pleadings on foreseeability are not plausible. But here, foreseeability is defeated twice over on the text of the contract, because section 12 expressly contemplates that government regulations might affect performance of the contract in the future. Quote, governmental or regulatory bodies may cause Kinder Morgan to incur additional cost or expense to comply with applicable regulations. And then it goes on to say how those costs will be allocated. Drummond says that section 12 is irrelevant because discovery could hypothetically have shown that the parties subjectively did not have these particular environmental regulations in mind when they use that broad language. But under New York law... Doesn't Drummond also say that that provision applies only to regulations that would impact Kinder Morgan and not regulations that would impact Drummond? It does. It does, Your Honor. But both of those things are irrelevant under New York law because New York law expressly says that the fact that it's included at all shows that it's an issue that the parties could have contemplated. That as stated in the New York case, General Electric versus Metals Resources Group, a risk is foreseen as a matter of law if it is mentioned in the contract, even if the precise causes of such disadvantage were not specified. And that's what's going on here. Before you finish, let me turn you to the pre-judgment interest part of your appeal. Are you still pressing that? Oh, we are, Your Honor. And we think the reasons for that are set forth in the briefing. But to ask you this, the only reference I can find in the district court to that is a long sentence, request the court grant summary judgment in favor of awarding Kinder damages amount of $23.4 million, comma, the maximum pre-judgment interest allowed by law, comma, cost, etc. That's seven words. Did I miss something? Did you press that issue in any other way anywhere other than in one seven-word clause before the district court? Well, Your Honor, we've mentioned it from the beginning of this case in our answer and our pleadings throughout. And Drummond expressly recognized that it was at issue in the summary judgment proceedings. Because the text of the contract is one that puts the burden on Drummond to show good faith rather than on Kinder Morgan to show bad faith, Drummond's arguments about the lack of evidence in the record about good faith are one of Drummond's failings to put that evidence in the record. Once the district court, you say, erroneously didn't mention it in its order. Did you move to alter amend to include that? No, Your Honor. It was denied by operation of law because it's something that the district court didn't address. I know. That's why you would have asked for the district court to address it. Yes, Your Honor. Well, it's something that if this court were to remand to the court, to the district court. I don't want to remand because we've got two very sophisticated parties and we've got two, I believe, sophisticated sets of lawyers on both sides. And you ought to know you've got to raise something in an adequate fashion. Not only that, but I'm not convinced. I'm going to give you a quick chance to convince me that the fact that the contract, the clause about pre-judgment interest, you say puts the burden on them to negate it. But it says, unless such payment is disputed in good faith in writing, set forth in reasonable detail, the basis of such dispute, which their complaint does. Their complaint says, here's our claims. We want this money for these reasons. I have no reason to believe it wasn't in good faith in writing. And they set forth in reasonable detail the basis for their dispute and their claim. I don't see, you know, 7.5% on $23.5 million. You're talking about one and two thirds, $1.6 million a year on that amount. I think that deserves more than seven words in a summary judgment motion. Well, we think so too, Your Honor. But we think that under the text of the contract, it's the burden was on Drummond to put forth evidence that it believes it had of good faith and of having put those reasons in writing. Drummond, in the only writing it ever had on this issue, was the one that Your Honor just mentioned. Drummond never mentioned the capacity issue. It never mentioned the impossibility of performance or the force measure. I'm sorry, the frustration of purpose issues. The only issue it mentioned was a few words about force measure, which is something that was dismissed. I've taken you past your time, counsel. Thank you. Thank you, Your Honor. Thank you. Mr. Wells, you've got your three minutes reserved. Thank you, Your Honor. I'd like to briefly go back to the condition preceded issue. Under the rationale that Ms. Drake has put forward and the district court applied, Kinder Morgan could post on its website, not we only have 2.5 million tons capacity. They could post on their website, we had closed the court, and send us an invoice at the end of the year for $13 million in shortfall fees when it is clear they cannot possibly perform. What about the year's notice point that your friend from Kinder Morgan set out? If you haven't given them the notice as required in the contract that you'll have any coal there, are they expected to spend resources to build out capacity just that we'll sit there? The genesis of the contract is they were supposed to have built out the capacity to begin with. The contract actually had some provisions for increasing capacity over the course of time, but they weren't able to get the land, they were able to do that. They've mentioned multiple times the amount of money they spent supposedly to get up to 4 million tons of capacity, and the issue is they did never have it. They did not design it appropriately, they did not have the appropriate equipment cranes assigned. But New York law is clear, a condition preceded does not allow you, if you cannot perform as promised, to still insist on the other party's performance. New York jurisprudence of contracts, treatise law, New York's highest court contravene and elute, that is just a non-starter of an argument that if they can't perform, they can still call the district court. Moving to the pre-judgment interest, I think Judge Barnes hit it, it was not raised at the district court. There's nothing in the contract language that says it is Drummond's burden to prove anything. It just says we have to pay interest unless we dispute it in good faith, and it's clear we disputed it. And the burden analysis, they're the plaintiff in a breach of contract case. They are the plaintiff seeking damages, including interest. They bear the burden of proving their entitlement to that. And even beyond that, on the burden shifting framework of summary judgment is well established. They were the movement. They have the burden, whether they bear the burden on this issue or not as to the substance, they have the burden on their summary judgment to show entitlement to demonstrate an absence of material fact. They didn't even point the district court to the provision of the contract that governs interest. They said the highest amount allowed by law, well, the contract sets that amount. They did not provide any basis for the district court to award a pre-judgment interest. I'll go ahead and conclude, Your Honors. I do feel like at the pleading stage, it is relatively low bar. It's going to be a difficult case. I think we should have at least had a chance to try. At the summary judgment stage, there were clearly questions of fact. I think the district court dodged them on improper legal basis and requested all of those would be reversed. Thank you, Your Honors. Thank you, counsel. We appreciate the arguments of all the counselors today and that this court is in recess until tomorrow morning, 9 a.m. Central time. Thank you.